Douglass Kinniry Law, LLC
By: Michelle J. Douglass, Esq.
1601 Tilton Road, Suite 6
Northfield, NJ 08225
(609) 788-3595; FAX (609) 788-3599
Email: mjd@myrightslawyers.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT,
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Estelle Hughes, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**The Township of  Franklin**<br><br>Defendant(s). | Civil Action 1:13-cv-03761-JEI-AMD<br><br><br>**PLAINTIFFS' NOTICE OF MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION AND SEND NOTICE TO THE CLASS** |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFIY AN FLSA COLLECTIVE ACTION AND SEND NOTICE TO THE CLASS

By: Michelle J. Douglass, Esq.

Attorney for the Plaintiffs

## TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………......…1

II.     STATEMENT OF THE CASE………………………………………………......… ….1

III.    A FLSA COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED

        AND NOTICE SENT TO THE CLASS…………..…………………………..…10

        A.  Legal Standards Governing FLSA Representative Actions…………..…….....10

        B.  This Case Meets the Standard for Conditional Certification…………………14

        C.  Defendants Should Provide Information Necessary to Effectuate Notice…….…15

        D.  Plaintiffs' Proposed Notice Should Be Approved…………………….………17

IV.     CONCLUSION ………………………………………………………………..…17

# TABLE OF AUTHORITIES

## Cases

*Auer v. Robbins*, 519 U.S. 452 (1997) ……………………………………………8

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) …………………………………………………………..7, 10

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945) ………………………………………………..…………..6

*Castillo v. P&R Enterprises, Inc.*, 517 F. Supp. 2d 440
(D.D.C. 2007) ……………………………………………...……………11-16

*Cryer v. Intersolutions, Inc.*,
Civ. A.No.06-2032, 2007 WL 1053214 (D.D.C.Apr.7, 2007) ………………...…12-15

*D.A. Schulte, Inc., v. Gangi*,
328 U.S. 108 (1946) ………………………………………..………………..6

*Davis v. Abercrombie & Fitch Co.*,
08 Civ. 1859 (PKC), 2008 WL 4702840
(S.D.N.Y.Oct.23, 2008) …………………………………………………..15

*Encinas v. J.J. Drywall Corp.*,
265 F.R.D.3 (D.D.C.2010) ……………………………...………..….11-15

*Frank v. Capital Cities Communications, Inc*,
88 F.R.D. 674 (S.D.N.Y. 1981) …………………………………..………………17

*Garcia v. San Antonio Metropolitan Transit Auth.*,
469 U.S. 528 (1985)………………………………………….………………8

*Garza v. Chicago Transit Authority*,
00 Civ. 0438, 2001 WL 503036 (N.D.Ill. May 8, 2001)……………………..……17

*Graham v. Overland Solutions, Inc.*
10-Cv-672 BEN (BLM), 2011 WL
1769737 (S.D.Cal.May 9, 2011) …………………………………...………………..16

*Guzman v. VLM Inc.*,
No. 07-CV-1126 (JG)(RER), 2007 WL 2994278 (E.D.N.Y.Oct.11, 2007) ……...…13

*Helton v. Factor 5, Inc.,*
C 10-04927 SBA, 2012 WL 2428219 (N.D.Cal.June 26, 2012) …….……………..16

*Hoffman v. Sbarro, Inc.,*
982 F.Supp.249 (S.D.N.Y. 1997) ……………………………….....…11-13, 15-16

*Houston v. URS Corp.,*
591 F.Supp.2d 827 (E.D. Va. 2008)…………………………………..…………..13

*Hunter v. Sprint Corp.,*
346 F.Supp.2d 113 (D.D.C. 2004) …………………………….….…..………11-13, 15

*Jewell Ridge Coal Corp. v. Mine Workers,*
325 U.S. 161 (1945) …………………………………….……………………...6

*Johnson v. American Airlnes, Inc.,*
531 F.Supp. 957 (D.C. Tex. 1982) …………………………………….....………17

*Lynch v. United Services Auto. Ass'n,*
491 F. Supp.2d 357 (S.D.N.Y. 2007)………………………………………...……15

*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982) ………………………………….….…………..9

*Martino v. Michigan Window Cleaning Co.,*
327 U.S. 173 (1946) …………………………………………..………...………6

*McKinney v. United Stor-AlL Centers, Inc.,*
585 F.Supp. 2d 6 (D.D.C. 2008) ……………………………………….….12, 14-15

*Romero v. Producers Dairy Foods, Inc.,*
235 F.R.D. 474 (E.D.Cal. 2006) …………………………………………………17

*Sherill v. Sutherland Global Servs. Inc.,*
487 F. Supp. 2d 344 (W.D.N.Y. 2007)…………………………….....……………16

*Soler v. G & U, Inc.,*
86 F.R.D. 524 (S.D.N.Y. 1980) …………………………….….…………………17

*Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,*
321 U.S. 590 (1944) …………………………………..……………..…………..8

*Veliz v. Cintas Corp.,*
03 Civ. 1180, 2004 WL 2623909 (N.D.Cal.Nov.12, 2004) …………………………17

*Walling v. Harnischfeger Corp.,*
325 U.S. 427 (1945) ………………………………..……………………………..6

**Statutes**

29 U.S.C. §206………………………………………………………….……..6-7

29 U.S.C. §207…………………………………………………….…….6-8, 10

29 U.S.C. §216(b)……………………………………………….……..…….1-3, 11

29 U.S.C. §256(b) …………………………………………………...……………13

**Regulations**

29 C.F.R. §516.4…………………………………………….…………………………16

29 C.F.R. §553.221……………………………………………….………6, 8, 10

29 C.F.R. §785.11…………………………………………………..………6

29 C.F.R. §785.14……………………………………………....………………5

## I.        Introduction

Plaintiffs, Estelle Hughes, Frances Gaetano and Thomas Little, current and former police officers with the Franklin Township Police Department, have filed this action on behalf of themselves and other similarly situated current and former police employees pursuant to 29 U.S.C. § 216(b). Plaintiffs allege that the Defendant, the Township of Franklin ("Franklin Township" or the "Defendant") failed and/or refused to pay them and a class of similarly situated police employees for time worked before the start of their official shift for years.

Plaintiffs respectfully request the Court to conditionally certify a Fair Labor Standards Act ("FLSA") collective action and order notice sent to members of a class of all current and former police officer employees employed by Franklin Township after November 20, 2010 who worked but were not paid wages and/or overtime wages for time worked pre and post shift.

## II.       Statement of Case

Plaintiffs are current or former employees of the Defendant, The Township of Franklin ("Franklin Township" and/or "Defendant")) employed within the last three (3) years from the date of this action as police officers. Plaintiffs have been at all times relevant members of the New Jersey State Policemen's Benevolent Association, PBA Local 122 ("PBA").

The PBA is at all times relevant, the exclusive collective negotiations agent for all lieutenants, sergeants and patrol officers for the Franklin Township Police Department ("Franklin Township" or "Police Department").

Franklin Township and the PBA entered into a collective bargaining agreement ("2007-10 CBA") regarding terms and conditions of employment, including wages, work hours and overtime. (Exhibit 1) This CBA is in effect for January 1, 2007 through December 31, 2010.

Franklin Township and the PBA entered into a collective bargaining agreement ("2011-14 CBA") regarding terms and conditions of employment, including wages, work hours and overtime. This CBA is in effect for January 1, 2011 through December 31, 2014. The relevant provisions of the 2007-10 CBA and the 2011-14 CBA are identical.

The Defendant, Franklin Township employs approximately twenty-five (25) full time and permanent police officers. Franklin Township has duly enacted an ordinance permitting the establishment of a Police Department in accordance with the law. The Chief of Police is responsible for the day to day operations of the Police Department, including its oversight, setting of schedules, payment of wages, implementation of the terms and conditions of employment as identified in the CBA. The Defendant acts by and through its agents, employees and representatives, each of whom acted in the course and scope of their employment with and for Franklin Township. (See generally, Exhibit 2, Certification of Plaintiff Estelle Hughes)

### FLSA Collective Action Allegations

The named Plaintiffs have brought action for violations of the FLSA as a collective action pursuant to Section 16 (b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons presently and formerly employed by the Franklin Township Police Department, in non-exempt police positions who were or are subject to unlawful pay practices and policies described herein and who worked for the Franklin Township Police Department, at any point in the three years preceding the date this action was initiated (the members of this putative class are referred to as "Plaintiffs").

Plaintiffs worked and work for the Franklin Township Police Department located at 1571 Delsea Drive, Franklinville, New Jersey as police officers holding different ranks and have all been subjected to the unlawful policies or practices as described herein.

Plaintiffs are similarly situated, have similar job duties, have substantially similar pay provisions, and all are subject to the CBA as described above, as well as being subject to the Defendant's unlawful wage, overtime and compensatory time policies and practices as described herein.

There are numerous similarly situated current and former police officer employees of the Defendant who were all compensated improperly for overtime work and/or not compensated at all for work performed and who were forced to use or lose accrued earned compensatory time in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join in the present action. Similarly situated police officer employees are known to the Defendant, are readily identifiable, and can be located through the Defendant's records.

Therefore, Plaintiffs should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated, pursuant to the "opt in" provisions of the FLSA, 29 U.S.C. § 216(b).

### General Factual Background

Plaintiffs worked for Defendant and are current or former hourly employees who, within the last three years, have been or are presently employed by the Defendant. Upon information and belief, Defendant has maintained an unlawful wage payment, overtime payment and compensatory time use system for at least the last three years, and has enforced such unlawful policies and practices as to each of the Plaintiffs.

To keep track of time worked, officers fill out monthly time sheets reflecting the number of hours worked each day. Officers work shifts of either eight (8), ten (10) or twelve (12) hours to

comprise at least one-hundred and sixty-eight (168) hours in a regular twenty-eight (28) day working period.

"The regular straight time pay is computed by dividing the annual base salary (See Schedule A) by 2,080. For those employees whose regularly scheduled work year is in excess of 2,080 hours, the hours worked beyond 2,080 shall be compensated at straight time, hour for hour in cash or compensatory time at the option of the Township." "Overtime is defined as all authorized hours of work in excess of one-hundred and sixty-eight (168) hours in a regular twenty-eight (28) day working period or in excess of the normal work hours in any shift." "The overtime rate of pay is computed by dividing the annual base salary and college incentive by 2,080 and multiplying by 1.5."

### Off-the-Clock Violations: The 10 Minute Required Pre-Shift Time Under Both the 2007-2010 CBA and the 2011-14 CBA

Defendant has established a practice which is incorporated by the 2007-10 CBA and the 2011-14 CBA as referenced above, that requires its uniformed police officers to report 10 minutes before their scheduled shift. Both agreements address certain conditions of employment as a police officer such as what constitutes "regular work" and "overtime". The relevant provision governing work hours is found at Article IX and is identical in both of the above-referenced agreements.

Article IX, ¶ C provides, "The regular schedule for employees will be at the discretion of the Chief of Police or his/her designee and will generally be an eight (8), ten (10) or twelve (12)

hour            shift            with            the            following            exceptions:

C.      The regular schedule for employees will be at the discretion of the Chief of Police or his/her designee and will generally be an eight (8), ten (10) or twelve (12) hour shift with the following exceptions:

1.      A "duty day" begins at ten (10) minutes prior to the start of the shift and ends on the hour, either eight (8) hours and ten (10) minutes later, ten (10) hours and ten (10) minutes later or twelve (12) hours and ten (10) minutes later or when the officer is relieved, whichever is sooner. Specifically, officers shall be prepared to assume normal patrol duties ten (10) minutes prior to the hour.

Defendant requires its police officers to report to work 10 minutes before their shift but does not pay the officers for this required report and work time.

Plaintiffs perform actual work during this 10 minute required pre-shift time.

## CBA Article IX, ¶C(1) Violates the FLSA

Defendant requires its police officer employees to report to work 10 minutes before the start of their shift. Defendant does not compensate its police officer employees for the 10 minute required pre-shift time.  Defendant requires its police officer employees to report to work 10 minutes before their shift *to perform work*. Plaintiffs in fact have performed, and continue to perform work during this 10 minute required pre-shift time. "Officers shall be prepared to assume normal patrol duties ten (10) minutes prior to the hour."

Even if Plaintiffs did not perform actual work during this 10 minute pre-shift time, this time is considered compensable because Defendant *requires* Plaintiffs to report to work at this time and to be ready to perform duties. Hence, this time is controlled by Defendant and considered primarily for the benefit of the employer and therefore compensable time. 29 C.F.R. § 785.14.

Plaintiffs seek Declaratory Judgment and relief directed against Defendant declaring the CBA, Article IX, ¶C(1), illegal and unenforceable. It constitutes an on- going violation of federal law under the FLSA. 28 U.S.C. §§ 2201-2202.

By statutory definition, the term "employ" includes "to suffer or permit to work." The workweek ordinarily includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place.

"Workday", in general, means the period between the time on any particular day when such employee commences his/her "principal activity" and the time on that day at which he/she ceases such principal activity or activities. The workday may therefore be longer than the employee's scheduled shift, hours, tour of duty, or production line time. 29 U.S.C. §§ 206-207; 29 C.F.R. § 785.11; 29 C.F.R. § 553.221.

FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945); see also D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114-116 (1946); Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944); Missel, supra, at 577; 29 C.F.R. 785.8 (1974).

Moreover, congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement. See e.g., Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 177 -178 (1946); Walling v. Harnischfeger Corp., 325 U.S. 427, 430- 432 (1945); Jewell Ridge Coal Corp. v. Mine Workers, 325 U.S. 161, 166 -167, 170 (1945).

"The Fair Labor Standards Act was not designed to codify or perpetuate [industry] customs and contracts. . . . Congress intended, instead, to achieve a uniform national policy

of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 742 (1981).

Article IX, ¶C(1) of the CBA's may not take away rights guaranteed under the FLSA. Because Article IX, ¶C(1) of the CBA's takes away the right to be compensated for work performed by Plaintiffs, it is in conflict with the provisions of the FLSA and may not be utilized to deprive the Plaintiffs of their statutory rights.

The "Savings Clause" at Article XXVI of the CBA, states, "If any provision of this Agreement or any application of this Agreement to any employee or group of employees is held invalid by operation of law or by a Court or other tribunal of competent jurisdiction, such provision shall be inoperative, but all other provisions shall not be affected thereby and shall continue in full force and effect. (Exhibit 1, Art. XXVI)

Article IX, ¶ C(1) must be deemed to be invalid and unenforceable as in violation of the FLSA. It may be deemed to be illegal and invalid without affecting any of the other terms of any other provision of the CBA.

Under FLSA, an employer may not require an employer to report to work in advance of his scheduled start time without paying the employee for that time. 29 U.S.C. §§ 206-207; see also, 5 See Wage and Hour Opinion Letter (March 11, 1987).

 Employees under the FLSA are entitled to compensation for "work," which is defined by the Supreme Court as an activity involving "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business." Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944).

The FLSA applies to employees of state and local governments. Auer v. Robbins, 519 U.S. 452 (1997); Garcia v. San Antonio Metropolitan Transit Auth., 469 U.S. 528, 546-547 (1985).

The computation of hours worked is governed by the following federal regulation:

 29 C.F.R. § 553.221

(b) Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. . . .

 Additionally, Section 207 sets the maximum hours under the FLSA. See 29 U.S.C. § 207. An employer shall not employ any employee for a "workweek longer than forty hours unless such employee receives compensation for his employment ... specified at a rate not less than one and one-half times the regular rate at which he is employed." Id.; See also C.F.R. § 778.316.

 Section 7(k) of the FLSA provides that employees engaged in fire protection or law enforcement may be paid overtime on a "work period" basis. A "work period" may be from 7 consecutive days to 28 consecutive days in length. For work periods of at least 7 but less than 28 days, overtime pay is required when the number of hours worked exceeds the number of hours that bears the same relationship to 212 (fire) or 171 (police) as the number of days in the work period bears to 28. For example, fire protection personnel are due overtime under such a plan after 106 hours worked during a 14-day work period, while law enforcement personnel must receive overtime after 86 hours worked during a 14-day work period.

Moreover, while the CBA in effect herein may provide the employee with more than what is required under the FLSA, it cannot take away what is minimally required under the FLSA.

It is unclear whether the Defendant has implemented the Section 7 (k) work period because the CBA's at all times in effect provide for a 28 day work period cycle, the Defendant has adopted policies and practices inconsistent with a Section 7(k) work period. Indeed, the work period and method of payment of overtime to its police employees is consistent with a 7 day, 40 hour work week.

An established work period is the "keystone" to the overtime pay exclusion under section 7(k). A section 7(k) work period must be "established" and "regularly recurring."  29 C.F.R. 553.224(a). Unless a public employer claims the section 7(k) exemption by establishing a regularly recurring work period, overtime will be computed on a 40-hour work-week basis. 2 (If an employer "fails to announce and take bona fide steps to implement a qualifying work period," the FLSA's standard overtime provisions should apply (i.e. 40 hours)); Calvao v. Town of Framingham, 2008 WL 2690358 (D. Mass. 2008) (unpublished opinion) (the case "requires a town both to announce the adoption of a qualifying work period and to take bona fide steps toward implementing the announced work period.")

Generally, whether retrospective or prospective, an employee's rights under the FLSA "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies for which it was designed." Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982).

 In this case, the CBA's cannot legally waive and/or alter the rights of an employee under the FSLA. See C.F.R. 553.25; see also,  29 C.F.R. § 785.23.

Here, the CBA provisions regarding a mandatory 10 minute uncompensated early in report time is in violation of the FLSA; and the CBA provsions regarding a Section 7(k) work period is contrary to the policies and practices of the Police Department requiring that the work period be defiend under 29 U.S.C. § 207 and C.F.R. § 778.316.

In law enforcement matters, if a police officer is given a patrol car to drive home and use on personal business, the time spent traveling in the car is not working time, even if the officer is required to leave the radio on so that he or she can respond to emergency calls. Once the officer responds to a call, however, the time involved is compensable. 29 C.F.R. § 553.221(f).

Plaintiffs have been provided with a patrol car to drive home and use on personal business, however, have been required to "sign on" for duty once the officer leaves home to report to work by contacting dispatch signaling that they have signed on for duty, and they have also been requested to respond to emergency and non-emergency business police work calls after this "sign on" time. Defendants have failed to compensate police officers for time worked following their "sign on" with dispatch and for responding to duty calls that occur before the official shift start time.

### III.    An FLSA Collective Action Should Be Conditionally Certified and Notice Sent to the Class

### A.  Legal Standards Governing FLSA Representative Actions

The purpose of the FLSA is to provide "specific minimum protections to *individual* workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay."'"Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981). In passing the FLSA, Congress intended to address long working hours that "are detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." Id. at 739. Congress also recognized that allowing individual employees subject to the same illegal practices to bring claims collectively was both fair and efficient. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). The FLSA provides for one or more employees to pursue an action in a representative capacity for "other employees similarly situated." Id.; 29 U.S.C. § 216(b).

A FLSA "collective action" differs from a Rule 23 representative action in that an employee must affirmatively opt-in to a FLSA collective action by filing a written consent with the court. Thus, there are only two requirements to proceed as a representative action under 216(b): (1) all plaintiffs must be "similarly situated," and (2) a plaintiff must consent in writing to take part in the suit. This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure. Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 6 (D.D.C. 2010) citing Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004).

There is only a threshold issue of whether the group is "similarly situated." Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). While the FLSA does not define "similarly situated," courts understand it to require a showing that the plaintiffs "and potential plaintiffs together were victims of a common policy or plan that violated the law." Encinas, supra, at 6, citing Castillo v. P & R Enterprises, Inc., 517 F. Supp. 2d 440, 445 (D.D.C. 2007). In determining if a group is similarly situated, courts in this District consider "(1) whether [putative class members] all worked in the same corporate department, division and location; (2) whether they all advanced similar claims; and (3) whether they sought substantially the same form of relief." Encinas, supra, at 6, quoting Hunter, supra, at 119. While courts consider these three factors, class members need not have identical job titles or duties or have worked in the same

11

department or location to be similarly situated. It is enough that they share substantively similar job responsibilities and suffer from a uniform pay policy. Encinas, supra, at 6 -7, citing Castillo, supra, at 446-48.

When employees are shown to be similarly situated, the district court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient way and has the discretion to facilitate notice to potential plaintiffs of their right to opt-into the action. See Hoffmann-La Roche, supra, at 166, 170, 172; Hunter, 346 F. Supp. 2d at 117. Such notice should be "timely, accurate, and informative." See Hoffmann-La Roche, supra, at 172. Notice should issue early in the litigation to give class members the opportunity to join the action. See e.g., Encinas, supra, at 6; McKinney v. United Stor-All Centers, Inc., 585 F. Supp. 2d 6, 8 (D.D.C. 2008); Castillo, supra, at 444 -445; Cryer v. Intersolutions, Inc., Civ. A. No. 06–2032, 2007 WL 1053214 at *2 (D.D.C. Apr. 7, 2007); see also, Sbarro, supra, at 262 (J. Sotomayor) ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.").

Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA. Encinas, supra, at 6; McKinney, supra, at 8. First, the court determines whether the proposed class members are "similarly situated." Encinas, supra, at 6; Castillo, supra, at 445. This first step is conducted early in the litigation before discovery is conducted and when the court has limited evidence regarding the "similarly situated" issue. At this initial stage,

[t]he court employs a lenient standard ... requiring only that the plaintiff make "a modest factual showing" that potential class members are "similarly situated." This showing may be made through pleadings and affidavits that demonstrate that "the putative class members were together the victims of a single decision, policy or plan" that violated the law.

McKinney, supra, at 8 (citations omitted); see also, Encinas, supra, at 6 (The modest factual showing "is ordinarily based mostly on the parties' pleadings and affidavits."); Cryer, supra, at

12

*2 (Plaintiffs have an initial burden of a "modest factual showing" demonstrating that the named plaintiffs and potential as yet unnamed class members "were victims of a common policy or plan that violated the law."), citing Hunter, supra, at 117. See also, Guzman v. VLM, Inc., No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *2 (E.D.N.Y. Oct. 11, 2007). "[I]t would be inappropriate . . . to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation" before discovery is complete); Sbarro, supra, at 262 (J. Sotomayor) (courts endorse early notice to facilitate "FLSA's broad remedial purpose and promot[e] efficient case management.")

The second stage is typically precipitated by a motion for   certification" filed by defendant after discovery is largely complete. Encinas, supra, at 6, citing Castillo, supra, at 445. If the additional claimants are similarly situated, the district court allows the representative action to proceed. If the claimants are not similarly situated, the district court decertifies the class and opt-in plaintiffs are dismissed without prejudice. Castillo, supra, citing Hunter, supra.

The reason for this two-step process with its relatively liberal first-stage standard for assessing the question of whether class members are "similarly situated" arises because, unlike a Rule 23 class action, limitations are not tolled for putative members of a FLSA class until they affirmatively opt into the action. Thus, it is critical that notice of the right to opt-in is issued promptly after the filing of the case if there is a colorable basis for believing the class members may be similarly situated. Castillo, at 444 -445, citing Hoffmann–LaRoche at 170; Cryer, at *2. See also, Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, see 29 U.S.C. § 256(b), courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs

early in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated.")

The second-stage of the proceeding, which occurs after an opportunity for discovery, allows the court to revisit the "similarly situated" question on a full factual record and to decertify the class if the facts demonstrate that the initial "conditional ruling" was erroneous. Castillo, at 445. Thus, the two-stage procedure protects the interests of workers in ensuring they receive prompt and timely notice of their right to vindicate their FLSA rights while simultaneously ensuring that only claims on behalf of genuinely similarly situated workers go to trial.

Courts regularly exercise their discretion to order notice be sent to a class of similarly situated employees early in a litigation. See, e.g., Encinas; McKinney; Castillo, at 445; Cryer, at 117. Delay for discovery is neither necessary nor appropriate given the running of the statute of limitations. Sbarro, at 262.


**B. This Case Meets the Standard for Conditional Certification**

Plaintiffs meet the first stage burden to show that the class of people employed as police officers covered under  the  2007-10 and 2011-14 CBA's employed by the Defendant, the Township of Franklin, police Department are similarly situated. The burden at this stage is lenient and the certification, the CBA, Shift request forms and Disciplinary Hearing Transcript offered on behalf of Plaintiffs are sufficient to meet it. The documentation establishes that the Defendant had a policy and practice of requiring its police officers to report to work 10 minutes before the start time of their shift and did not pay the police officers for this time. Finally, the record shows that the CBA which applies to all patrol, sergeants and lieutenants of the police

14

department, is, on its face, a violation of the FLSA because it requires the covered police officers to perform work without compensation.

Accordingly, the putative class is similarly situated and should be conditionally certified for purposes of notifying putative class members of the opportunity to join the action. *Encinas*, 265 F.R.D. at 3; McKinney, 585 F. Supp. 2d at 6; *Castillo*, 517 F. Supp. 2d at 445; *Cryer*, 2007 WL 1053214; *Hunter*, 346 F. Supp. 2d at 117.

### C. Defendants Should Provide Information Necessary to Effectuate Notice

Court authorization of notice to the class in a FLSA collective action "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffmann-La Roche, at 172.

In *Hoffmann-La Roche*, the Supreme Court recognized that courts have the authority to require employers to provide the names and addresses of putative class members, and courts regularly require such production to facilitate notice. See, e.g., *Encinas*, at 7; Cryer; Hunter, at 121.

Plaintiffs ask the Court to order Defendant to provide counsel with the last known addresses of the class members, i.e., all patrol, sergeant and lieutenant police officers employed with the Police Department, in order to assist with the issuance of the notice and to provide counsel with the dates of birth and social security number for any class members whose mailed notice is returned by the post office. The dates of birth and social security numbers can assist with locating the correct address for those workers so that receive notice. Davis v. Abercrombie & Fitch Co., 08 Civ. 1859(PKC), 2008 WL 4702840, *12 (S.D.N.Y. Oct. 23, 2008); Lynch v. United Services Auto. Ass'n, 491 F. Supp. 2d 357, 371-72 (S.D.N.Y. 2007).

Plaintiffs further request that the Court allow counsel to send a follow-up postcard to any class members who have not responded thirty days after the mailing of the initial notice. Such follow up mailing contributes to dissemination among similarly situated employees and serves what the Supreme Court in Hoffman-La Roche recognizes as section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172. Accordingly, courts have approved the sending of a follow-up postcard to class members who have not responded after the mailing of the initial notice. See e.g., Helton v. Factor 5, Inc., C 10–04927 SBA, 2012 WL 2428219, *7 (N.D. Cal. June 26, 2012); Graham v. Overland Solutions, Inc., 10–CV–672 BEN (BLM), 2011 WL 1769737, *4 (S.D. Cal. May 9, 2011).

Plaintiffs also requests that the Court order Defendant to post the notice at the Defendant's City Hall and within the Police Department worksites in the same areas in which it is required to post FLSA notices. See 29 C.F.R. 516.4 (requiring posting of FLSA requirements "in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy").

Posting of notice also contributes to dissemination among similarly situated employees and serves what the Supreme Court in Hoffman-La Roche recognizes as section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172.

District Courts around the country have recognized posting as an efficient, non-burdensome method of notice that courts regularly employ. See, Castillo, at 449 (ordering notice posted in "(1) Defendant's offices, or (2) office spaces designated for Defendant's use in third-party buildings"); Sherrill v. Sutherland Global Servs. Inc., 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007)

16

(allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (finding that posting of notice in workplace and mailing is appropriate and not punitive); Veliz v. Cintas Corp., 03 Civ. 1180, 2004 WL 2623909, at * 2 (N.D. Cal. Nov. 12, 2004) (citing Court order to post notice in all workplaces where similarly situated persons are employed); Garza v. Chicago Transit Authority, 00 Civ. 0438, 2001 WL 503036, at *4 (N.D. Ill. May 8, 2001) (ordering defendant to post notice in all its terminals); Johnson v. American Airlines, Inc., 531 F. Supp. 957, 961 (D.C. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority"); Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (requiring defendant to "permit the posting of copies of public bulletin boards at FP offices"); Soler v. G & U, Inc., 86 F.R.D. 524, 531-32 (S.D.N.Y. 1980) (authorizing plaintiffs to "post and mail the proposed Notice of Pendency of Action and Consent to Sue forms").

### D. Plaintiff's Proposed Notice Should Be Approved

A copy of the notice Driscoll proposes to post and send to class members is attached to the motion as P 3.  This notice informs class members in neutral language of the nature of the action, of their right to participate in it by filing a consent to sue form with the Court, and the consequences of their joining or not joining the action (Exhibit 3, Proposed Consent to Join Form).

### IV.    CONCLUSION

For all of the foregoing reasons, this Court should conditionally certify this action as a FLSA representative action on behalf of a class of all current and former patrol, sergeant and

17

lieutenants of the Franklin Township Police Department, authorize counsel to issue notice that is attached to this motion and to send follow up postcards to any class members who have not responded thirty days after the mailing of the initial notice, and require Defendant to post notice of this lawsuit and consent form in a conspicuous location in the workplace. The Court should also order Defendant to provide Plaintiffs with the last known addresses of the putative class members and the telephone number, date of birth, and last four digits of the social security number of any potential class members whose notice is returned by the post office, so that Plaintiffs' counsel may provide effective notice to the class.


Respectfully submitted,

Douglass Kinniry Law, LLC

 */s/ Michelle J. Douglass*
Michelle J. Douglass, Esq.



Dated:      November 19, 2013