[Doc. No. 58]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ESTELLE HUGHES, et al., | |
| Plaintiffs, | Civil No. 13-3761 (AMD) |
| v. | |
| THE TOWNSHIP OF FRANKLIN, | |
| Defendant. | |

## **MEMORANDUM OPINION**

This matter comes before the Court by way of motion for summary judgment filed by Defendant the Township of Franklin (hereinafter, "Defendant" or "township"). (See Motion for Summary Judgment (hereinafter, "Def.'s Mot.) [Doc. No. 58].) Plaintiffs Estelle Hughes, Frances Gaetano, Thomas Little, Vincent Parisi, Michael Marsh, and James Rausch (hereinafter, "Plaintiffs") have opposed the motion. (See Brief in Opposition (hereinafter, Pls.' Opp'n) [Doc. No. 63].) The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78(b).[1] For the reasons that follow, Defendant's

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73(b), and Rule 73.1 of the Local Civil Rules for the United States District

motion for summary judgment is granted in part and denied in part.

In this action, Plaintiffs, current and former law enforcement officers for the Township of Franklin, generally allege that Defendant "fail[ed] and refus[ed] to properly compensate Plaintiffs for" otherwise compensable pre-shift work, in accordance with an "established" practice incorporated into the parties' collective bargaining agreement that required officers "to report" ten minutes prior to "their scheduled shift."[2] (Amended Complaint [Doc. No. 3], ¶¶ 25-28, 63-64.) Specifically, Plaintiffs allege that "[d]efendant's violations of the FLSA include but are not limited to: (1) unlawfully requiring Plaintiffs to report to work [ten] minutes in advance of their officially assigned shift and not paying them at all for this required time at regular rates of pay and/or overtime rates of pay; (2) requiring and/or permitting Plaintiffs to work beyond the end of their shift without compensation and without paying Plaintiffs for properly calculated regular rate wages and/or overtime rate compensation; and (3) failing and/or refusing to pay Plaintiffs for duty work performed on the way to the police station pre-shift start time." (Id. at ¶ 63.) Plaintiffs seek

_____

Court, District of New Jersey. (See Order/Consent to Jurisdiction by a US Magistrate Judge [Doc. No. 17], Dec. 4, 2013.)

[2] On June 18, 2013, Plaintiffs filed the initial complaint in this action (see Complaint [Doc. No. 1]), followed by an amended complaint on June 19, 2013. (See Amended Complaint [Doc. No. 3].)

civil damages in accordance with Plaintiffs' monetary loss. (Id. at ¶ 64.) Plaintiffs also allege that the pre-shift requirement, set forth in Article IX, ¶ C(1)[3] of the parties' collective bargaining agreement, required Plaintiffs to perform uncompensated work in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (hereinafter, "the FLSA" or "the Act"). (Id. at ¶¶ 29-57.) Consequently, Plaintiffs seek declaratory judgment concerning the "invalid, illegal[,] and unenforceable" nature of Defendant's "practices and policies" set forth in Article IX, ¶ C(1). (Id. at ¶ 67.) Plaintiffs also "claim that they have been forced to use accrued compensatory time or lose it and seek damages associated with the forced use of compensatory time, and that they have been forced to lose earned compensatory time," consequently, Plaintiffs "seek a declaration from the Court that the forced use of compensatory time is illegal in that it violates the FLSA." (Id. at ¶ 4.)

On April 14, 2014, the Court ordered that the action be "conditionally designated as a collective action under the

---

[3] Article IX, ¶ C(1) of the CBA provides that "[t]he regular schedule for employees will be at the discretion of the Chief of Police or his/her designee and will generally be an eight (8), ten (10) or twelve (12) hour shift with the following exceptions: 1. A 'duty day' begins at ten (10) minutes prior to the start of the shift and ends on the hour, either eight (8) hours and ten (10) minutes later, ten (10) hours and ten (10) minutes later or twelve (12) hours and ten (10) minutes later or when the officer is relieved, whichever is sooner. Specifically, officers shall be prepared to assume normal patrol duties ten (10) minutes prior to the hour." (See Exhibit B [Doc. No. 58-2], 20-21 on the docket.)

FLSA."[4] (Memorandum Opinion and Order [Doc. No. 25] 15, Apr. 14, 2014.) Plaintiffs Michael Marsh and James Rausch were added to the action as opt-in plaintiffs on August 6, 2014. (See Order [Doc. No. 41], Aug. 6, 2014.) Fact discovery concluded on March 16, 2015 (see Amended Scheduling Order [Doc. No. 54]), and Defendant timely filed the present motion. (See Def.'s Mot. [Doc. No. 58].)

Defendant's motion for summary judgment presents three arguments: (1) that "[t]he Franklin Township Police Department [(hereinafter, "FTPD")] properly operates under 29 U.S.C. § 207(k)"; (2) that "Franklin Township Police Officers are compensated for muster time as a component of their base salaries"; and (3) that "[t]he use of Franklin Township Police vehicles by Township Police Officers for commuting to and from the police station is not compensable time under federal law." (See Def.'s Brief [Doc. No. 58-4], 4, 8, 13.) Plaintiffs argue that Defendant's motion should be denied because there are issues

---

[4] The FLSA generally permits actions to proceed on a collective basis provided that the plaintiffs demonstrate that they are similarly situated to the putative collective action plaintiffs. Specifically, § 216(b) of the Act sets forth the "collective action" mechanism, which enables an employee alleging a FLSA violation to bring an action on "behalf of himself" and other "similarly situated" employees, subject to the requirement that each party plaintiff consents in writing to join the action and files such express, written consent "in the court in which [the] action is brought." 29 U.S.C. § 216(b). A similarly situated employee must therefore affirmatively "opt in" to an ongoing FLSA suit. Id.

of material fact as to: (1) "what constitutes a 'work period'";
(2) "whether the mandatory pre-shift preparation time was
encompassed within the police officers' base salary"; (3)
"whether the officers were relieved from duty before the end of
their shifts"; and (4) "whether the Chief of Police modified the
'duty day' and the use of patrol vehicles before and after the
officer's shift work." (Pls.' Opp'n [Doc. No. 63-1], 3.)

The following facts are not in dispute:[5]

1. The Township of Franklin ("Franklin
Township or "township") is a municipality
organized under the laws of New Jersey.
[citation omitted][6]

---

[5] Pursuant to Local Civil Rule 56.1(a), a party moving for
summary judgment must provide a statement setting forth "material
facts as to which there does not exist a genuine issue[.]" L. CIV.
R. 56.1(a). The opponent of summary judgment "shall furnish, with
its opposition papers, a responsive statement of material facts,
addressing each paragraph of the movant's statement, indicating
agreement or disagreement and, if not agreed, stating each
material fact in dispute and citing to the affidavits and other
documents submitted in connection with the motion[.]" Id. "[A]ny
material fact not disputed shall be deemed undisputed for
purposes of the summary judgment motion." Id. The opponent "may
also furnish a supplemental statement of disputed material facts
. . . if necessary to substantiate the factual basis for
opposition." Id. In this case, Plaintiffs admitted to paragraphs
1, 2, 3, 4, 5, 6, 9, 12, 14, 15, 25, 29, 30, 32, 33, 34, 35, 36,
38, 39, 40, 41, 42, 43, 44, and 45 of Defendant's Statement of
Material Facts. Plaintiffs admitted to paragraphs 26, 27, and 28
to the extent that those paragraphs applied to Plaintiffs, but
asserted that they lacked knowledge as to other officers.
Plaintiffs admitted to paragraphs 7, 8, 11, 19, 20, and provided
additional explanations with those admissions. Plaintiffs
admitted to paragraph 21 to the extent that the "CBA so provides
for such a situation, however, the situation did not occur."
Plaintiffs denied the remaining paragraphs.
[6] The parties undisputed material facts are from the following
exhibits: Amended Complaint [Doc. No. 58-2], Exhibit A; Portion

5

2. The township maintains a police department ("police department or "department"), with all sworn and civilian members of the department being employees of the township. [citation omitted]

3. The township has a Collective Bargaining Agreement ("CBA") with the New Jersey State Policemen's Benevolent Association, PBA Local 122, covering certain sworn members of the department. . . . [citation omitted]

4. The CBA relevant to this case covers patrol officers and detectives up to and including the rank of corporal. [citation omitted]

5. PBA Local 122 has been the exclusive representative of the police officers and detectives in the police department of the Township of Franklin for collective negotiations since 2000. Prior to then PBA Local 178 was the exclusive representative of the township police. [citation omitted]

6. Per the CBA, Franklin Township police officers are paid on a two-week cycle. The base contract amount is divided by 26 and every pay check consists of 1/26th of the base amount. [citation omitted]

7. The CBA provides that the regular straight time rate of pay is computed by dividing the annual base salary by 2080. [citation omitted]. The base salary includes longevity pay. [citation omitted]

---

of the relevant CBA [Doc. No. 58-2], Exhibit B; Deposition of Franklin Township Police Chief Michael Rock [Doc. No. 58-2], Exhibit C; Affidavit of Franklin Township Police Chief Michael Rock [Doc. No. 58-2], Exhibit D; and Supplemental Affidavit of Police Chief Michael Rock [Doc. No. 58-3], Exhibit E. (See Def.'s Statement of Material Facts [Doc. No. 58-1]; see also Pls.' Statement of Material Facts [Doc. No. 63].)

8. The CBA defines overtime as all authorized hours of work in excess of 168 hours in a 28 day work cycle <u>or</u> work in excess of the normal work hours in any shift. [citation omitted]

9. The CBA provides that the overtime rate of pay is computed by dividing the sum of the annual base salary plus college incentive by 2,080 and multiplying by 1.5. [citation omitted]

. . . .

11. At all times relevant to this case, Franklin Township police officers were required to complete a monthly time sheet.[7]

12. The monthly time sheet lists each shift worked by the officer and the duration of the shift. The monthly time sheet also lists time other than regular work time . . . . [citation omitted]

. . . .

14. Per the CBA, the regular shifts for Franklin Township police officers may be eight (8), ten (10) or twelve (12) hour shifts. [citation omitted]

15. At all times relevant to this case, all Franklin Township police officers assigned to patrol worked 12-hour shifts. [citation omitted]

. . . .

19. A duty day is defined by the CBA as beginning 10 minutes prior to the start of

---

[7] Franklin Township Police Chief Michael Rock (hereinafter, "Chief Rock") testified that these monthly time sheets were not used by payroll, but were "an internal document that the police department uses to keep track of officers' time[.]" (<u>See</u> Deposition of Chief Rock (hereinafter, "Rock Deposition") [Doc. No. 58-2], Exhibit C, 31:12-16, 31 on the docket.)

the shift and ending on the hour. [citation omitted]

20. Per the CBA, a duty day for an officer working a 12-hour shift would be 12 hours and 10 minutes or whenever the officer is relieved, whichever is sooner. [citation omitted]

21. The CBA thus provides that an officer may work less than a full shift and still be paid for the full shift, if he or she is relieved prior to the formal end of the shift. [citation omitted]

. . . .

25. As early as January 1997, Franklin Township and its police department have had contracts providing for muster time and the ability of officers to leave when relieved, even if earlier than the formal end of the shift. [citation omitted]

26. No Franklin Township police officer has challenged the muster time provision prior to the present lawsuit. [citation omitted]

27. No Franklin Township police officer has ever been disciplined for failing to arrive ready for duty 10 minutes before the start of his or her shift. [citation omitted]

28. No Franklin Township police officer has ever lost pay for failing to arrive ready for duty 10 minutes before the start of his or her shift. [citation omitted]

29. The current chief of the Franklin Township Police Department, a 27-year veteran of the force, is not aware of any voucher seeking overtime for authorized or emergency time ever being denied. [citation omitted]

30. The current chief of the Franklin Township Police Department is not aware of

any grievance being filed by a township police officer based on overtime compensation being denied. [citations omitted]

. . . .

32. Franklin Township police officers who are residents of the township are permitted, but not required, to use their police cruisers to travel between their home and the police station at the start and end of their shifts. [citation omitted]

33. The police cruisers are to remain at the officers' homes and not used for personal business. [citation omitted]

34. When an officer leaves home to report for duty he or she must notify dispatch that the officer has left home for the police station. [citation omitted]

35. When an officer arrives at home at the end of the shift he or she must again notify dispatch. [citation omitted]

36. The purpose of notifying dispatch as described in paragraphs 12 and 13 is so the police department knows where the police cruisers are at all times. [citation omitted]

. . . .

38. If an emergency occurs during commute time that requires additional manpower, dispatch may call an officer's car and request that the officer assist in the call. Should that happen, the officer is entitled to compensation and is expected to turn in a payroll voucher for such compensation. [citation omitted]

39. In Franklin Township, overtime may be paid in cash or in compensatory time. [citation omitted]

9

40. At all times relevant to her involvement in the case, plaintiff Estelle Hughes was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

41. At all times relevant to his involvement in this case, plaintiff Francesco Gaetano was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

42. At all times relevant to his involvement in this case, plaintiff Thomas Little was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

43. At all times relevant to his involvement in this case, plaintiff Vincent Parisi was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

44. At all times relevant to his involvement in this case, plaintiff Michael Marsh was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

45. At all times relevant to his involvement [in] this case, plaintiff James Rausch was a sworn police officer of the Franklin Township Police Department and engaged in law enforcement activities. [citation omitted]

(Def.'s Statement of Material Facts (hereinafter, "Def.'s Facts") [Doc. No. 58-1]; Pls.' Response to Statement of Material Facts (hereinafter, "Pls.'s Facts") [Doc. No. 63].)

A court may grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56 (c)). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to

11

the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once a moving party satisfies its burden, the party opposing summary judgment must then "'set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 248 (quoting Fᴇᴅ. R. Cɪᴠ. P. 56(e)). A non-moving party must present more than "'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 436-37 (3d Cir. 2007) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)); see also Anderson, 477 U.S. at 249-50. The Court must view the evidence in a light most favorable to the non-moving party and any "justifiable inferences" shall be extended to the non-moving party." Anderson, 477 U.S. at 255.

An employee who files a claim under the FLSA bears "the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute, Portal-to-Portal Act of 1947, as recognized in IBP Inc. v. Alvarez, 546 U.S. 21, 219-20 (2005). Under the FLSA, employers are required to keep records of, inter alia, "the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211 (c). Therefore, "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of

those records."[8] <u>Mt. Clemens</u>, 328 U.S. at 687. "In the absence of adequate employer records of employees' wages and hours, as required by the FLSA, the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work, but rather to allow the employee . . . to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." <u>Martin v. Selker Bros.</u>, 949 F.2d 1286, 1297 (3d Cir. 1991) (citing <u>Mt. Clemens</u>, 328 U.S. at 687); <u>see also</u> <u>Reich v. Gateway Press, Inc.</u>, 13 F.3d 685, 700 (3d Cir. 1994) (stating "it is settled that the burden (with respect to a given employee) is met if it is proved that the employee has in fact performed work for which he was improperly compensated and if the employee produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). To meet this burden

---

[8] The Court notes that no employer records have been provided in either party's submissions with respect to the pending motion despite the undisputed fact that "[a]t all times relevant to this case, Franklin Township police officers were required to complete a monthly time sheet." (<u>See</u> Def.'s Facts [Doc. No. 58-1], ¶ 11; <u>see also</u> Pls.' Facts [Doc. No. 63], ¶ 11.) Consequently, for purposes of the present motion the time sheet records do not discharge Defendant's burden. <u>See</u> <u>Kolesnikow v. Hudson Valley Hosp. Ctr.</u>, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) (stating, in considering a FLSA overtime claim that "[t]he [c]ourt will assume for the purpose of deciding this motion that [the employer]'s records were not accurate and that [the employee] may therefore meet her burden by proving that she worked hours for which she was not compensated, and by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" (citations and quotation marks omitted)).

"[i]t is not necessary for every single affected employee to testify," rather "[t]he testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations." Martin, 949 F. 2d. at 1298 (citations omitted); but see Rosano v. Twp. of Teaneck, 754 F.3d 177, 189 (3d Cir. 2014) (noting that "[a]n estimation of damage, which fails to set forth the proper method of calculation and does not account for day-to-day differences in officer scheduling, hardly provides a foundation for an inquiring court to reasonably infer FLSA violations or the amount of an award" (citation and quotation marks omitted)).

In certain circumstances courts have found that plaintiff's testimony alone is sufficient to establish a just and reasonable inference as to the extent of the unpaid work performed. See Rong Chen v. Century Buffet & Rest., No. 09-1687, 2012 WL 113539, at *7 (D.N.J. Jan. 12, 2012) (finding that the plaintiffs had provided sufficient evidence to support a just and reasonable inference that they had performed work for which they were not properly compensated where the plaintiffs and the defendant testified that that the "[p]laintiffs regularly worked 11 to 12 hours [per day] six days per week, totaling a minimum of 68 hours worked weekly" and provided testimony "that [they] never received any overtime pay for this work"); see also Rivera v. Ndola Pharm. Corp., 497 F. Supp. 2d 381, 389-90 (E.D.N.Y. 2007)

14

(finding that the plaintiff met her burden where, in the absence of employer records, she testified to her wages, her normal hours, and the number of hours that she worked beyond the normal schedule during the period relevant to the case); but see Kolesnikow, 622 F. Supp. 2d at 119 (noting that "[w]hile there are cases in which FLSA plaintiffs have defeated summary judgment motions based on their own testimony, those plaintiffs have offered credible testimony approximating the number of hours they worked without pay"); see also Adami v. Cardo Windows, Inc., No. 12-2804, 2015 WL 1471844, at *10 (D.N.J. Mar. 31, 2015) (finding that the plaintiffs had not met their burden because "[a]s in Kolesnikow, [it was] not a case where [the] [p]laintiffs have offered credible testimony approximating the number of uncompensated overtime hours").

If the employee satisfies this burden, the employer then must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Mt. Clemens, 328 U.S. at 687-88. In the event the employer does not come forward with such evidence, the court may "award damages to the employee, even though the result be only approximate." Id. at 688.

The Court turns first to Defendant's argument that "[t]he Franklin Township Police Department properly operates

15

under 29 U.S.C. § 207(k)" and has a 28-day recurring work period. (See Brief [Doc. No. 58-4], 4, 8.) Unless a statutory exception applies, the FLSA requires employers to compensate employees at a rate "not less than one and one-half times the regular rate at which [they] are employed" for any hours worked in excess of forty hours during a work week. See 29 U.S.C. § 207(a). Section 207(k) provides an exemption that eases the requirements of § 207(a) for "[e]mployment by public agency engaged in fire protection or law enforcement activities." See 28 U.S.C. § 207(k). The exception "'accommodates the inherently unpredictable nature of firefighting and police work by permitting employers to adopt work periods longer than one week.'" Rosano, 754 F.3d at 185 (quoting O'Brien v. Town of Agawam, 350 F.3d 279, 290 (1st Cir. 2003)). To qualify for the § 207(k) exemption, "(1)'the employees at issue must be engaged in fire protection or law enforcement within the meaning of the statute and (2) the employer must have established a qualifying work period.'" Id. at 186 (quoting Calvao v. Town of Framingham, 599 F.3d 10, 14 (1st Cir. 2010)).

A public agency qualifies for this exception if it adopts a work period between seven and twenty-eight days. See 28 U.S.C. § 207(k). If the public agency adopts a 7-day work period, it need not pay overtime compensation to its law enforcement employees until they have worked over forty-three hours in a 7-

16

day work period. See 29 C.F.R. § 553.230(c). If the public agency adopts a 14-day work period, it need not pay overtime compensation to its law enforcement employees until they have worked more than eighty-six hours in a 14-day period. See id. If a public agency adopts a 28-day work period, it need not pay overtime compensation to its law enforcement employees until they have worked more than 171 hours in a 28-day period. See id. An employer, however, "may opt to pay its employees more than § 207(k) mandates without forfeiting the benefits of the exemption." Calvao, 599 F.3d at 15 (citations omitted).

A "work period" under § 207(k) "refers to any established regularly recurring period of work." See 29 C.F.R. § 553.224(a). Additionally, "[a]n employer may have one work period applicable to all employees, or different work periods for different employees or groups of employees." See 29 C.F.R. § 553.224(b). Pursuant to the applicable regulations the work period "need not coincide with the duty cycle or pay period or with a particular day of the week or an hour of the day." See id. It is the "cycle of days actually worked that is controlling." McGrath v. City of Phila., 864 F.Supp. 466, 478 (E.D. Pa. 1994); see also Caminiti v. Cty. of Essex, No. 04-4276, 2007 WL 2226005, at *8 (D.N.J. July 31, 2007) (observing that "[a] work period is generally categorized by the cycles of days worked and the amount of days off"). The applicable contract "may well be probative of

17

the type of work period under which the city has chosen to pay its employees." See Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1992). Additionally, although the "'establishment' of a [§ 20]7(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days," McGrath, 864 F.Supp. at 476 (emphasis added), "employers seeking to qualify for the § 207(k) exemption need not express an intent to qualify for or operate under the exemption." Rosano, 754 F.3d at 186. Rather, "[e]mployers must only meet the factual criteria set forth in § 207(k)." Id.

Ultimately, "[w]hether the employer has proved that he has adopted a [§ 207(k)] work period is a question for the jury." Birdwell, 970 F.2d at 805 (citations omitted); see also Caminiti, 2007 WL 2226005, at *9 (noting "courts have strongly urged that the question of whether a [§] 207(k) exemption has been established should be left to the jury"); but see McGrath, 864 F.Supp. at 478 (reasoning that "a certain set of facts, if undisputed, may support only one inference with respect to whether an employer adopted a [§ 20]7(k) work period" and "[u]nder such circumstances, it would be appropriate for the court to decide the [§ 20]7(k) issue by way of summary judgment" (internal citation omitted)).

Employers bear the burden of proving the applicability of an FLSA exception. Corning Glass Works v. Brennan, 417 U.S.

18

188, 196-97 (1974); see also Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1143 (3d Cir. 1983) (stating "[t]he burden of proof is on the employer to establish an exemption" to the FLSA). FLSA "exemptions are to be narrowly construed against the employers seeking to assert them." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). The Third Circuit has stated that "[a]n employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes 'plainly and unmistakably' within the exemption's terms." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Arnold, 361 U.S. at 392).

The parties do not dispute that Defendant is a public agency or that Plaintiffs are engaged in law enforcement. (See Def.'s Facts [Doc. No. 58-1], ¶¶ 1-2, 35-40; see also Pls.' Facts [Doc. No. 63], ¶¶ 1-2, 35-40.) The only remaining issues, therefore, are whether Defendant has established a qualifying work period and, if so, its length, and it is Defendant's burden of proof as to these issues. See Corning Glass Works, 417 U.S. at 196-97; see also Guthrie, 722 F.2d 1143. With respect to those Plaintiffs who worked 12-hour shifts, the parties dispute the length of the § 207(k) qualifying work period, and with respect to Plaintiff Gaetano, who worked 8-hour shifts, the parties dispute that a § 207(k) qualifying work period exists. The Court

will first address the parties' arguments with respect to the 12-hour shift Plaintiffs.

Defendant argues that with respect to those Plaintiffs who work 12-hour shifts, FTPD operates on a 28-day work period. (See Brief [Doc. No. 58-4], 7-8.) To support this argument, Defendant cites to the Supplemental Affidavit of Chief Rock who certifies that "Franklin Township police officers assign to patrol work [fourteen] 12-hour shifts in a 28-day work cycle." (See Exhibit E [Doc. No. 58-3], ¶ 9.) Specifically, Chief Rock certifies that "Franklin Township police officers assigned to patrol work 2 days, are off 2 days, work 3 days, are off 2 days, work 2 days, and are off 3 days" and that "[t]he pattern repeats for the remaining time in the 28-day work cycle." (See id. at ¶ 10.) Defendant also cites to the overtime provision of the CBA, under which "overtime is based, in part, on 168 hours worked in a 28-day cycle," to support its argument. (See Brief [Doc. No. 58-4], 7 (emphasis added) (citing Exhibit B [Doc. No. 58-2], 20 on the docket).)

Plaintiffs argue that with respect to those Plaintiffs who work 12-hour shifts, FTPD operates on a 14-day work period. (See Pls.' Opp'n [Doc. No. 63-1], 9.) To support this argument Plaintiffs note first that the CBA does not include the word "'working period'" and that Defendant has not passed a "[r]esolution or [o]rdinance" which "announces the 'regular

20

recurring' working period." (See id.) Plaintiff Michael Marsh certifies that "[a]s a patrolman, [he] was required to work a 14-day work period, seven (7) days on shift and seven (7) days off." (Certification of Plaintiff Michael J. Marsh, Jr. (hereinafter, "Marsh Certification") [Doc. No. 63-3], ¶ 5.) Plaintiffs maintain that the FTPD's undisputed 2-week pay period, supports their argument that Defendant has established a 14-day work period. (See Def.'s Facts [Doc. No. 58-1], ¶ 6; see also Pls.' Facts [Doc. No. 63], ¶¶ 6, 16(b).)

Plaintiffs also argue that the testimony of Chief Rock also supports the argument that Defendant has not established a § 207(k) 28-day work period. Specifically, Chief Rock testified that while officers were required to keep monthly time sheets, these time sheets were submitted each month, not every twenty-eight days, and that payroll did not keep a 28-day pay cycle. (See Rock Deposition [Doc. No. 58-2], 52:9-18, 36 on the docket.) Additionally Plaintiffs argue that the "idea" of the FTPD 28-day work period "originated" at Chief Rock's deposition, when in response to counsel's inquiry regarding the CBA overtime provision which provides in part that officers are entitled to overtime for all hours worked in excess of 168 hours in a 28-day work cycle that he did not "have any understanding as to where the 168 hours was derived." (See Pls.' Facts [Doc. No. 63], ¶ 16(a) (citing Rock Deposition [Doc. No. 58-2], 50:7-13).)

Defendant argues with respect to Plaintiff Gaetano, who worked as a detective and a corporal, that "[t]he statute and regulations permit a regularly recurring work period of [seven] days" and "[t]hus, Franklin Township complies with all statutory requirements to operate under 29 U.S.C. § 207(k) with regard to its police officers, including [P]laintiffs." (Reply Brief [Doc. No. 66], 2-3.) Plaintiffs argue with respect to Plaintiff Gaetano, that the FTPD never implemented a § 207(k) qualifying work period for his position and therefore, that "[h]e qualifies for overtime rate payment for work in excess of 40 hours per week" pursuant to 29 U.S.C. § 207(a)(1). (Pls.' Opp'n [Doc. No. 63-1], 9.) In support of their argument, Plaintiffs cite to Plaintiff Gaetano's certification, in which he avers that during times relevant to the present case, he was "assigned to work 8-hour shifts, 5-days a week with weekends off shift." (Certification of Francesco Gaetano (hereinafter, "Gaetano Certification" [Doc. No. 63-4], ¶ 7.) Gaetano certifies that he "was permitted to work any combination of an 8-hour day which [he] usually satisfied by working either 7 a.m. to 3 p.m., or 8 a.m. to 4 p.m. and even 9 a.m. to 5 p.m. Monday through Friday." (Id.)

After reviewing the summary judgment record, the Court finds that there remain genuine issues of material fact precluding entry of summary judgment. With respect to the 12-hour

shift Plaintiffs, Plaintiffs' evidence of the relevant pay schedule, monthly time sheets, lack of a defined work period in the CBA, and Plaintiff Marsh's certification that he worked a fourteen-day work period, although not dispositive, could lead a reasonable juror to conclude that Defendant did not establish a 28-day work period. This is an issue that is properly left to the jury. See Singer v. City of Waco, 324 F.3d 813, 818 (5th Cir. 2003) (reasoning that in a case where a city argued it established a 28-day work period and its firefighter employees argued it established a 14-day work period, the issue of "whether the [c]ity established a 14-day or a 28-day work period[] is a question of fact, and was properly submitted to the jury"). With respect to Plaintiff Gaetano, the Court concludes that based on the evidence of Plaintiff Gaetano's weekly work schedule, a reasonable juror could conclude that Plaintiff Gaetano had a "traditional workweek requiring overtime after 40 hours" and that with respect to Plaintiff Gaetano, whether Defendant has established that it has "adopted a [§ 20]7(k) work period is a question for the jury." Birdwell, 970 F.2d at 805. Consequently, the Court finds that the issue of whether Defendant has adopted a qualifying § 207(k) work period cannot be resolved by way of summary judgment and the Court denies Defendant's motion on this ground.

The Court turns next to Defendant's argument that "Franklin Township Police Officers are compensated for muster time[9] as a component of their base salaries." (See Brief [Doc. No. 58-4], 8.) While "federal law governs the construction of a collective bargaining agreement [], traditional rules of contract interpretation apply when not inconsistent with federal labor law." Rosano, 754 F.3d 177 (citing In re Teamsters Indus. Emps. Welfare Fund, 989 F.2d 132, 135 (3d Cir. 1993)). The Supreme Court has reasoned though, that "[a] collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. Transp.-Commc'n Emps. Union v. Union Pac. R.R. Co., 385 U.S. 157, 160-61 (1966) (citations omitted). Furthermore, "[t]he collective agreement covers the whole employment relationship. It calls into being a new common law – the common law of a particular industry." Id. at 161. "[T]o interpret such an agreement, it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." Id.; see also Babcock v. Butler Cty., 806 F.3d 153, 158 (3d Cir. 2015) (observing that in FLSA cases a collective bargaining agreement is "one relevant – though not

---

[9] Defendant defines "muster time" as "time officers spend prior to the start of their tours of duty." (Brief [Doc. No. 58-4], 4.)

dispositive – factor" in determining whether officers are entitled to pay during a meal break).

The FLSA requires employers to pay employees for all work performed. See 29 U.S.C. §§ 206, 207. "[E]ven where [a] lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances." Mt. Clemens, 328 U.S. at 688; see also Kuebel v. Black & Decker, Inc., 643 F.3d 352, 361 (2d Cir. 2011) (observing "[t]o establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work"). As noted supra, to recover damages under the FLSA in the absence of employer records, an employee must show "he [or she] has in fact performed work for which he was not properly compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Martin, 949 F.2d at 1298.

The first count of Plaintiffs' complaint alleges, in part, that Defendant "require[es] Plaintiffs to report to work 10 minutes in advance of their officially assigned shift" and "require[es] and/or permit[s] Plaintiffs to work beyond the end

of their shift" without compensation. (See Amended Complaint [Doc. No. 3], ¶ 63.) With respect to this portion of Plaintiffs' complaint, Defendant argues "Franklin Township Police Officers are compensated for muster time as a component of their base salaries." (See Brief [Doc. No. 58-4], 13.) Defendant argues that "the Third Circuit has recognized that muster time . . . may be a component of the negotiated salary for police officers." (Id. at 8 (citing Rosano, 754 F.3d at 192).) Defendants further assert that here, as in Rosano "muster time is included in the officers' negotiated base salary" because the relevant CBA language "provides for an officer leaving early but still being credited and paid for a full shift." (Id. at 10, 13.) Defendant maintains, also, that if Franklin Township patrol officers work "beyond the 12 hours of their shifts" they "are entitled to overtime upon submission of a voucher." (Id. at 12.)

Plaintiffs maintain the present case is distinguishable from Rosano[10] because the CBA and factual circumstances considered

---

[10] In Rosano, the governing CBA had a provision which required officers to report for muster time ten minutes prior to the start of an "eight-hour tour" and remain for muster time for ten minutes at the conclusion of the tour. 754 F.3d at 182. In Rosano, the plaintiffs, who were current and former police officers, filed a complaint against the township seeking compensation under the FLSA for time spent during muster time. Id. at 183. The Third Circuit affirmed the district court's grant of summary judgment to the defendant with respect to the plaintiffs' muster time argument finding, in the "matter of contract interpretation" that "muster time was a component of an officer's daily tour schedule." Id. at 190-92. As noted by

by the <u>Rosano</u> court are not identical to the circumstances in the present case. (Pls.' Opp'n [Doc. No. 63-1], 10, 13-14.) Plaintiffs argue that there is no evidence that any plaintiff was "relieved earlier than her/his shift and worked less than a 12 hour or 8 hour day to compensate for the early-in time."[11] (<u>Id.</u> at 14.) Plaintiffs argue that they are entitled to overtime pay for any time worked in excess of a normal shift, but assert that they "did not submit vouchers for such overtime because they were not aware they could do so." (<u>Id.</u> at 14-15.) Plaintiffs also argue that because "the bookkeeping and timekeeping responsibilities belong to the employer, not the employee . . . Plaintiffs are entitled to pursue their claim for reimbursement of all time for which they were not compensated." (<u>Id.</u> at 15-16.)

The relevant portion of the CBA provides:

---

Plaintiffs, the language of the CBA considered in <u>Rosano</u> and the CBA the Court is considering here are not identical.

[11] The Court notes that Plaintiffs argue, for the first time in their opposition brief, that patrol officers were required to report to work thirty minutes prior to the start of their shifts and that detectives and corporals were required to report to work ten minutes prior to the start of their shifts. (<u>See</u> Pls.' Opp'n [Doc. No. 63-1], 10.) In its reply brief, Defendant disputes Plaintiffs' argument that certain officers were required to report to work thirty minutes prior to the start of their shifts. (<u>See</u> Reply Brief [Doc. No. 66], 8.) In support of this argument Defendant has provided two certifications from FTPD employees. (<u>See</u> Exhibit A [Doc. No. 66-1], Affidavits of Kenneth Crescitelli and Vincent DiPietro.) Here, the Court will address only Defendant's argument with respect to the ten minutes of muster time cited in Plaintiffs' Amended Complaint (<u>see</u> <u>generally</u> Amended Complaint [Doc. No. 3]), contained in the CBA, and addressed by Defendant's motion for summary judgment. (<u>See</u> Brief [Doc. No. 58-4], 8-13.)

> The regular schedule for employees will be
> at the discretion of the Chief of Police or
> his/her designee and will generally be an
> eight (8), ten (10) or twelve (12) hour
> shift with the following exceptions:

> > A 'duty day' begins at ten (10)
> > minutes prior to the start of the
> > shift and ends on the hour, either
> > eight (8) hours and ten (10)
> > minutes later, ten (10) hours and
> > ten (10) minutes later[,] or
> > twelve (12) hours and ten (10)
> > minutes later <u>or</u> when the officer
> > is relieved, <u>whichever is sooner</u>.
> > Specifically, officers shall be
> > prepared to assume normal patrol
> > duties ten (10) minutes prior to
> > the hour.

(<u>See</u> Exhibit B [Doc. No. 58-2], 21 on the docket (emphasis added) (setting forth Article IX, ¶ C(1) of the CBA).) Chief Rock testified that for a 12-hour shift, an officer is not "expect[ed] to work a minimum of 12 hours [and] 10 minutes" but rather that the "[i]f the officer is relieved sooner, [the officer] may work less." (<u>See</u> Rock Deposition [Doc. No. 58-2], 41:5-11, 34 on the docket.) Chief Rock also testified that if an officer worked ten minutes in excess of a 12-hour shift, the officer would be entitled to overtime compensation, if the officer "fill[s] out [a] voucher to get paid."[12] (<u>See</u> <u>id.</u> at

---

[12] Plaintiffs also all certify that "[w]e did not submit vouchers for overtime because we were not aware we could do so and assumed vouchers were for pre-authorized overtime tasks, events or expenses such as traffic details, third party paid vendor events or shortage of staff call-ins on days off." (See Marsh Certification [Doc. No. 63-3], ¶ 23; <u>see</u> <u>also</u> Gaetano

42:11-18, 34 on the docket.) Plaintiffs do not dispute that pursuant to the CBA, an officer working a 12-hour shift would be relieved from duty either after 12 hours and 10 minutes or whenever the officer is relieved, whichever is sooner. (See Pls.' Facts [Doc. No. 63], ¶ 20.) Plaintiffs all certify, however, that despite this provision they have never been relieved early from duty. (See Marsh Certification [Doc. No. 63-3], ¶ 15; see also Gaetano Certification) [Doc. No. 63-4], ¶ 18; see also Hughes Certification [Doc. No. 63-5] ¶ 9; see also Rausch Certification [Doc. No. 63-6], ¶ 14; see also Little Certification" [Doc. No. 63-7], ¶ 14; see also "Parisi Certification" [Doc. No. 63-8], ¶ 14.)

After reviewing the summary judgment record, the Court finds that there remain genuine issues of material fact precluding entry of summary judgment. Specifically, with respect to the CBA's "muster time" provision, Plaintiffs' certifications that they were never relieved early from a shift, although not dispositive, could lead a reasonable juror to conclude that the "muster time" provision is not contemplated as a component of

Certification) [Doc. No. 63-4], ¶ 25; see also Certification of Plaintiff Estelle M. Hughes (hereinafter, "Hughes Certification") [Doc. No. 63-5] ¶ 22; see also Certification of Plaintiff James M. Rausch, Jr. (hereinafter, "Rausch Certification") [Doc. No. 63-6], ¶ 22; see also Certification of Plaintiff Thomas C. Little (hereinafter, "Little Certification") [Doc. No. 63-7], ¶ 22; see also Certification of Plaintiff Vincent C. Parisi (hereinafter, "Parisi Certification") [Doc. No. 63-8], ¶ 22.)

the officers' base salaries, and that the officers are entitled to compensation for their shifts. Consequently, the Court finds that the issue of whether "muster time" is contemplated as a component of the officers' base salaries cannot be resolved by way of summary judgment and the Court denies Defendant's motion on this ground.

The Court turns next to Defendant's argument that "the use of Franklin Township police vehicles by township police officers for commuting to and from the police station is not compensable time under federal law." (See Def.'s Brief [Doc. No. 58-4], 13.) The first count of Plaintiffs' complaint alleges, in part, that Defendant has violated the FLSA by "failing and/or refusing to pay Plaintiffs for duty work performed on the way to the police station pre-shift start time." (Amended Complaint [Doc. No. 3], ¶ 63.) Under most circumstances, employers are not required to compensate employees for "walking, riding, or traveling to and from the actual place of performance" of employment or for "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1)-(2); see also Steiner v. Mitchell, 350 U.S. 247 (1956) (holding "activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the

principal activities for which covered workmen are employed and are not specifically excluded by [the Act]").

Pursuant to 29 C.F.R. § 553.221(f),

> [a] police officer who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during travel time even where the radio must be left on so that the officer can respond to emergency calls. Of course, the time spent in responding to such calls is compensable.

Defendant argues that its policy with respect to officers' use of police cruisers to commute complies with the FLSA and that Plaintiffs have offered no evidence to establish that they are not compensated if they have answered a call when commuting. (Brief [Doc. No. 58-4], 17.)

Franklin Township has a policy whereby officers who are township residents may use police cruisers to commute to and from the police station. (See Def.'s Facts Doc. No. 58-1], ¶ 32; see also Pls.' Facts [Doc. No. 63], ¶ 32.) Pursuant to the policy, all officers are required to notify dispatch when they leave and arrive at home. (See Def.'s Facts [Doc. No. 58-1], ¶¶ 34-36; see also Pls.' Facts [Doc. No. 63], ¶¶ 34-36.) If an emergency occurs during an officer's commute, "dispatch may call an officer's car and request that the officer assist in the call" and if that happens, "the officer is entitled to compensation and is expected to turn in a payroll voucher for such compensation." (See Def.'s

31

Facts [Doc. No. 58-1], ¶ 38; <u>see</u> <u>also</u> Pls.' Facts [Doc. No. 63], ¶ 38.)

Plaintiffs do not seek reimbursement for all time they have spent commuting to and from the police station, rather they "seek reimbursement for time worked when responding to the calls that they did receive on their way to work or from the police station" and argue they "have never before sought reimbursement for this time because they were unaware that under the FLSA such time is compensable." (Pls.' Opp'n [Doc. No. 63-1], 18.) Specifically, Plaintiffs argue "[t]here are no signs, no manuals, no literature within the department which describes what does and/or does not constitute overtime." (<u>Id.</u>) The only evidence Plaintiffs provide to support this argument is the following paragraphs in each certification:

> The other Plaintiffs involved in this litigation and I can cumulatively recall at least twenty (20) occasions which we have responded to police matters while operating our patrol vehicles on the way to or on the way home from the Franklin Township Police Department within the relevant period for which we have not been compensated at base pay, regular rate of pay or overtime pay.

(<u>See</u> Marsh Certification [Doc. No. 63-3], ¶ 22; <u>see</u> <u>also</u> Gaetano Certification [Doc. No. 63-4], ¶ 24; <u>see</u> <u>also</u> Hughes Certification [Doc. No. 63-5] ¶ 21; <u>see</u> <u>also</u> Rausch Certification [Doc. No. 63-6], ¶ 21; <u>see</u> <u>also</u> Little Certification [Doc. No.

32

63-7], ¶ 21; <u>see also</u> Parisi Certification [Doc. No. 63-8], ¶ 21.)

The Court finds Plaintiffs identical certifications have failed to provide sufficient evidence from which the Court can reasonably infer the amount of time Plaintiffs spent responding to emergency calls while commuting. <u>See</u> <u>Martin</u>, 949 F.2d at 1291. This vague "estimation of damages" which "does not account for day-to-day differences in officer scheduling, hardly provides a foundation for an inquiring court to 'reasonably infer[]' FLSA violations or the amount of an award." <u>Rosano</u>, 754 F.3d at 189 (alterations in original)(quoting <u>Martin</u>, 949 F.2d at 1297).

In considering the summary judgment record, the Court finds, that with respect to Plaintiffs' claim that Defendant violated the FLSA by "failing and/or refusing to pay Plaintiffs for duty work performed on the way to the police station pre-shift time (<u>see</u> Amended Complaint [Doc. No. 3], ¶ 63.), that Defendant has established "an absence of evidence to support the [Plaintiffs'] case," and Plaintiffs have failed to present sufficient evidence that a material issue of fact exits. Consequently, the Court finds Defendant is entitled to summary judgment on this issue.[13]

---

[13] To the extent Plaintiffs argue Defendant's "motion does not substantively address all of the claims raised in the

Consequently, for the reasons set forth, and for good cause shown, Defendant's motion for summary judgment [Doc. No. 58] is granted in part and denied in part. An appropriate order will be entered.

Date: December 23, 2015

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

---

[c]omplaint" (Pls.' Opp'n [Doc. No. 63-1], 18), the Court notes that this Opinion addresses only those arguments raised by Defendant's motion [Doc. No. 58].